1   Alyssa A. Qualls (IL Bar No. 6292124)
    Email: quallsa@sec.gov
2   Amy S. Cotter (IL Bar No. 6238157)
    Email: cottera@sec.gov
3   Raven A. Winters (IL Bar No. 6291077)
    Email: wintersr@sec.gov
4

5   Attorneys for Plaintiff
    Securities and Exchange Commission
    David Glockner, Regional Director
6   Robert J. Burson, Associate Regional Director
    Amy S. Cotter, Associate Regional Director
7   Alyssa A. Qualls, Regional Trial Counsel
    175 West Jackson Blvd., Suite 900
8   Chicago, Illinois 60604
    Telephone: (312) 353-7390
9   Facsimile: (312) 353-7398



# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

### Northern Division

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>vs.<br><br>DAVID B. KAPLAN, ESQ., SYNCHRONIZED ORGANIZATIONAL SOLUTIONS, LLC, SYNCHRONIZED ORGANIZATIONAL SOLUTIONS INTERNATIONAL, LTD., and MANNA INTERNATIONAL ENTERPRISES, INC.,<br><br>    Defendants,<br><br>and<br><br>LISA M. KAPLAN, THE WATER-WALKING FOUNDATION, INC., and MANNA INVESTMENTS, LLC,<br><br>    Relief Defendants. | Case No.    3:16-cv-00270<br><br>**COMPLAINT**<br><br><br><br><u>**JURY DEMAND**</u><br><br>**FILED UNDER SEAL** |

Case No. --------

Plaintiff United States Securities and Exchange Commission (the "SEC" or "Commission") alleges as follows:

## JURISDICTION AND VENUE

1.    The SEC brings this action pursuant to Sections 20(b) and 20(d) of the Securities Act [15 U.S.C. §77t(b)], and Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§78u(d) and 78u(e)].

2.    This Court has jurisdiction over this action pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

3.    Venue is proper in this Court pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Defendants David B. Kaplan, Esq. and Manna International Enterprises, Inc. and Relief Defendants Lisa M. Kaplan and Manna Investments, LLC reside in the United States District Court for the District of Nevada, Northern Division. In addition, many of the acts, practices and courses of business constituting the violations alleged herein have occurred within the jurisdiction of the District of Nevada, Northern Division.

4.    Defendants directly and indirectly made use of the means and instrumentalities of interstate commerce and of the mails in connection with the acts, practices, and courses of business alleged herein, and will continue to do so unless enjoined.

## SUMMARY

5.    This case concerns material misrepresentations made to investors – and a fraudulent scheme perpetrated – by Defendant David B. Kaplan, Esq. and three entities that he controlled: Synchronized Organizational Solutions, LLC ("SOS"); Synchronized Organizational Solutions International, Ltd. ("SOSI"); and Manna International Enterprises, Inc. ("Manna Int'l").

6.    From at least May 1, 2012 to the present, Kaplan, directly and through SOSI, offered investments in a purported off-shore investment program ("SOSI Offering") and Kaplan, through SOS and Manna Int'l, received investor funds from the SOSI Offering and misappropriated a portion of those funds as described below.

7.    During this period, Kaplan made knowing oral misrepresentations to prospective investors in the SOSI Offering about the use of investor funds. Kaplan told prospective investors

that their funds would be pooled with other investor funds to invest in an off-shore investment account ("Investment Account") to support an international trading program. Kaplan assured potential investors that the Investment Account would be protected against loss and that they would earn monthly profits of approximately 10%.

8. Based upon these representations, Kaplan was able to raise $15.8 million from at least 26 investors who reside in at least eight states.

9. In reality, Kaplan did not use investor funds as promised. While Kaplan sent approximately $10.1 million of the investor funds to certain off-shore entities, Kaplan also transferred $5.6 million in investor funds into other accounts he controlled and used at least $2.3 million for his personal benefit and approximately $1.8 million to make Ponzi-like payments to other investors.

10. In addition, Kaplan sent approximately $1.1 million to Lisa Kaplan ("L. Kaplan"), The Water-Walking Foundation, Inc. ("WWF"), and Manna Investments, LLC ("Manna").

11. Kaplan also used at least $360,000 to invest in an allegedly fraudulent scheme at the center of a federal criminal indictment in Ohio.

12. Moreover, from at least June 2015 to March 2016, Kaplan sent approximately $385,000 to St. Kitts and Nevis. Of that amount, Kaplan wired approximately $79,394 to a St. Kitts law firm to obtain passports and/or St. Kitts and Nevis citizenship for himself and his wife in connection with St. Kitts and Nevis' Citizenship-By-Investment program.

13. Kaplan continued to make monthly payments to most investors until approximately September 2015. Soon thereafter, Kaplan told investors that there were issues with the Investment Account, and that the Investment Account was frozen, along with their principal investments.

14. Kaplan continued to lull investors by promising them that he was working to repay their principal, despite the fact that Kaplan has received no payments from any off-shore account since December 2015.

15. As recently as April 4, 2016, Kaplan has made payments to investors, using misappropriated investor funds, ranging from $7,000 - $19,000.

16. By making repeated material misrepresentations to prospective and existing investors

about the nature and performance of their investments, Defendants committed securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5] and Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)], among other violations.

17. The SEC brings this lawsuit to halt Defendants' ongoing violations of the federal securities laws, to prevent further harm to investors, and to seek disgorgement and civil penalties stemming from Defendants' wrongdoing, among other remedies.

## DEFENDANTS

18. **David B. Kaplan, Esq.**, age 49, is a resident of Glenwood, Nevada. He is Director of Synchronized Organizational Solutions International, Ltd. Kaplan controls the day-to-day operations of – and has sole control over the investment decisions for – Synchronized Organizational Solutions, LLC, Manna International Enterprises, Inc., and Synchronized Organizational Solutions International Ltd. From June 2005 to December 2006, Kaplan worked as a financial advisor for Merrill Lynch, Pierce, Fenner & Smith and received his S7 and S66 licenses during that timeframe. Those licenses are no longer active. Kaplan has been licensed to practice law in California since December 16, 1991.

19. **Synchronized Organizational Solutions, LLC** is a limited liability corporation that appears to have been registered in both the State of Washington and the State of Nevada. SOS purports to be engaged in the business of consulting, but its corporation status is inactive in the State of Washington and revoked in the State of Nevada. Kaplan controls this entity.

20. **Synchronized Organizational Solutions International Ltd.** is an International Business Company registered in Belize. SOSI purports to be a global consulting firm that facilitates international business and financial transactions. Kaplan controls this entity.

21. **Manna International Enterprises, Inc.** is an S-Corp that has its principal place of business in Nevada. Manna Int'l wholly owns SOSI as its sole subsidiary and is the entity that pays U.S. taxes for all income to SOSI. Kaplan controls this entity.

**RELIEF DEFENDANTS**

22. **Lisa M. Kaplan**, age 49, is a resident of Glenwood, Nevada, and married to David Kaplan.

23. **The Water-Walking Foundation, Inc.** is a Nevada non-profit corporation. David Kaplan is the Chairman, and Lisa Kaplan is the Executive Director. WWF purports to be a private "non-operating foundation" that promotes issues including children, poverty, education, and Christian values.

24. **Manna Investments, LLC** is a limited liability corporation that appears to have been registered in both the State of Washington and the State of Nevada. Its corporation status is inactive in the State of Washington and revoked in the State of Nevada. Kaplan controls this entity.

**FACTS**

25. From at least May 1, 2012, to the present, Kaplan, directly and through SOSI, has been engaged in an ongoing fraudulent scheme to defraud 26 investors who reside in eight states. During that period, Kaplan, through SOS and Manna Int'l, has received at least $15.8 million of investor funds from the SOSI Offering, a purported off-shore investment program.

**Kaplan Makes Misrepresentations To Investors For SOSI Offering.**

26. Kaplan met some of his prospective investors through word-of-mouth recommendations from his current investors. Once introduced, Kaplan made multiple oral representations that described the program. All of these oral representations were intended to convince prospective investors that the SOSI Offering was a low-risk, high-return, private off-shore trading program. Kaplan also highlighted the fact that he is an attorney with most prospective investors, providing them with his California bar number, and referred certain investors to his websites: http://sosforbiz.com and http://water-walking.org.

27. Kaplan represented that such programs typically required high investment amounts in order for investors to participate but, after searching for approximately six to eight years, he found one that would allow investors to participate at lower levels. Kaplan further represented that he had invested in the program prior to bringing other prospective investors into the program.

28. Kaplan told prospective investors that the program requires a minimum investment

of $100,000. Kaplan allowed some prospective investors to pool their money to reach the minimum investment amount, while he told other prospective investors that their investment funds would be pooled with his and/or other prospective investors' funds to participate in the program.

29. Kaplan guaranteed the safety of the program, assuring investors that their principal investment will be protected from loss at all times through a purported "SWIFT MT760" block.

30. Kaplan told prospective investors that, despite the block on their principal funds, they would earn monthly profits of approximately 10% from off-shore trading conducted by private traders and bankers, based on the amount of their principal investment.

31. Kaplan represented to prospective investors that he would be working with a Luxembourg Fiduciary ("Fiduciary").

32. After prospective investors agreed to invest in the program, Kaplan asked them to sign an escrow agreement and wire the investment funds to his Interest on Lawyer Trust Accounts ("IOLTA Accounts").

33. The escrow agreement stated that the investment funds would remain safely within the IOLTA Accounts until such time as the investor gave Kaplan written instructions to transfer the funds to investments recommended by SOSI.

**Defendants' Post-Investment Communications Confirm Oral Representations.**

34. After investors wired the investment funds to Kaplan, most executed various versions of a Joint Venture Investment Agreements ("JVIA") with SOSI and Kaplan, who signed as the Director of SOSI.

35. Each version of the JVIA contained written representations about the investment program that were consistent with the pre-investment oral representations that Kaplan made to prospective investors.

36. For example, the JVIA represented that Kaplan would transfer the escrow funds into a specially-created, private Investment Account controlled and blocked by SOSI, in collaboration with its Fiduciary.

37. The JVIA further represented that the Investment Account would enjoy "full protection against loss, while at the same time benefiting from various financial transactions

1  managed by private bankers and traders that create monthly profits based on the amount on deposit
2  during the transactions."

3  38.  The JVIA described the financial transactions as "buy/sell trading, execution of
4  Futures, Options, CFD's [sic], Stocks, Forwards, Commodities, Precious Metals (Gold, Silver, etc.),
5  Crude Oil, Forex, and other transactions within the international capital markets through private
6  bankers and traders legally affiliated with SOSI through a confidential, profit sharing agreement."

7  39.  The JVIA represented that profits were achieved through the use of private traders'
8  credit lines only, which protected the Investment Account from any loss of principal.

9  40.  The JVIA further represented that investors would receive monthly disbursements of
10 investment profit in an amount expected to be 10% or between 10% and 15% of the investment for
11 any full month of trading.

12 41.  Throughout the scheme, Kaplan regularly communicated with the investors via email
13 and sent monthly statements on SOSI letterhead that identified their purported monthly profit
14 payments. Kaplan also routinely sent e-mail updates to investors and continued to represent that
15 their principal investments were safe.

16 42.  Kaplan also encouraged investors to re-invest their "profit" payments.

17 43.  Certain investors stopped receiving payments in the summer of 2015.

18 44.  When investors inquired with Kaplan about why the payments had stopped, he gave
19 various excuses, including that there were Foreign Account Tax Compliance Act issues with the
20 Investment Account. He later explained that the program had ended as of August 31, 2015.

21 **Kaplan's Misuses Investor Funds.**

22 45.  As described above, Kaplan told prospective investors that their investment funds
23 would be transferred to an off-shore Investment Account and used to participate in a trading
24 program conducted by private bankers and traders.

25 46.  In reality, Kaplan knew that approximately $5.6 million of the approximate $15.8
26 million collected from investors were never transferred to any off-shore account or trading program.

27 47.  Instead, Kaplan directed these funds into U.S. and non-U.S. bank accounts that he
28 controlled, including personal accounts in his name, at least two off-shore accounts he controls in

the name of SOS and Manna Int'l, joint accounts with his wife, his IOLTA accounts, and business accounts in the name of SOS, SOSI, Manna Int'l, L. Kaplan, WWF, and Manna.

48. In addition, Kaplan spent approximately $2.3 million in investor funds for his personal benefit:

    a. From February 9, 2015, to December 29, 2015, Kaplan spent approximately $592,000 to purchase and remodel a condo in Nevada;

    b. From June 2015 to March 2016, Kaplan sent to St. Kitts and Nevis approximately $385,000, of which at least $79,394 was wired to a St. Kitts law firm to obtain passports and/or St. Kitts and Nevis citizenship for Kaplan and his wife; and

    c. Kaplan also transferred investor funds to his personal and joint accounts that are being used to pay for his personal expenses.

49. In October 2013, Kaplan used at least $360,000 in money raised from investors in the SOSI Offering to invest in a United States-based program offered by WMA Enterprises, LLC, which is an allegedly fraudulent scheme at the center of a federal criminal indictment. *See United States v. William M. Apostelos, et al.*, No. 3:15-cr-148 (S.D. Ohio Oct. 29, 2015); *see also SEC v. WMA Enterprises, LLC, et al.*, No. 1:15-cv-00699 (S.D. Ohio Oct. 29, 2015).

50. Kaplan also transferred approximately $1.1 million to L. Kaplan, WWF and Manna. L. Kaplan has joint control over many of Kaplan's personal accounts.

51. In making the material misrepresentations to investors identified in paragraphs 26 through 44, Kaplan, SOS, SOSI, and Manna Int'l acted with *scienter*. At the time they made the misrepresentations, Kaplan and SOSI knew that:

    a. Between May 2012 and the present, Kaplan directed approximately $5.6 million of the $15.8 million in investor funds – nearly 1/3 of investor's money – to bank accounts that Kaplan controlled for non-investment purposes;

    b. Investors had not made the "profits" contained in the emailed investor statements on SOSI letterhead; and

        c.    Investor principal payments were being used to repay other investors.

52.    In addition to the misrepresentations and omissions, Kaplan used SOS, SOSI, and Manna Int'l as part of his fraudulent scheme by transferring investor funds into and through multiple entities in contradiction of his representations to investors.

53.    Kaplan acted knowingly and with *scienter* and his *scienter* is imputed to SOS, SOSI, and Manna Int'l.

54.    Kaplan transferred the remaining funds that he collected from investors – approximately $10.1 million – to off-shore accounts.

55.    Kaplan received approximately $7.3 million back from those same off-shore accounts, but paid out approximately $9.1 million to investors, exceeding the payments received from any off-shore accounts by approximately $1.8 million.

56.    Thus, Kaplan used approximately $1.8 million of investor funds he had initially diverted to make Ponzi-like payments to other investors.

57.    From May 1, 2012 to the present, Kaplan has made payments to at least 26 investors.

58.    Accounting for these payments to investors, investors may have suffered a loss of approximately $7.8 million.

59.    In late 2015, Kaplan promised investors that he was working to return their principal investment. Kaplan claimed that he was exploring pursuing legal action against the Fiduciary, but in the meantime, he was going to obtain a loan from a purported Hong Kong partner to pay back the principal investments.

60.    Kaplan has been making payments in the range of $7,000 - $19,000 to various investors over the past few months and has made payments to investors as recently as April 4, 2016.

61.    Kaplan has repaid certain investors with misappropriated investor funds. Kaplan has no apparent legitimate source for any repayments to investors and has not received any funds from non-U.S. accounts since December 2015.

62.    Once the investment program ceased, Kaplan regularly communicated with investors by e-mail and telephone about the status of his efforts to pay back investors' principal payments and his efforts to start a new investment program in 2016. For example, in a December 31, 2015 e-mail

to investors, Kaplan discussed "[t]he extent to which we can 'escape' ongoing scrutiny by the U.S. for our future project funding program and whether and under what conditions our firm would be permitted to take on additional JV project funding investors (such as yourself) in the New Year."

**Kaplan Invokes His Fifth Amendment Rights.**

63. On February 17, 2016, as part of its investigation into the securities law violations identified in this Complaint, the SEC issued an investigative subpoena to Kaplan requiring him to appear and provide testimony under oath to the SEC regarding the funds he raised from investors for the SOSI Investment.

64. On May 9, 2015, rather than appear for testimony, Kaplan submitted a declaration to the SEC, confirming that he was asserting his Fifth Amendment right against self-incrimination and that, on that basis, he would refuse to answer any of the SEC's questions regarding, among other topics: (a) SOS, SOSI, Manna Int'l., L. Kaplan, WWF, or Manna; (b) representations he made to prospective investors in connection with the offer or sale of securities; (c) representations he made to prospective investors that he knew to be false; (d) his role in creating or disseminating offering documents to prospective investors; and (e) his use of interstate commerce or the mails in connection with trading programs or joint ventures that he has effected or caused to be effected.

## COUNT I
### Violations of Section 10(b) of the Exchange Act, and Exchange Act Rules 10b-5(a) and (c)
### (Against Kaplan, SOS, SOSI, and Manna Int'l)

65. Paragraphs 1 through 64 are realleged and incorporated by reference.

66. As more fully described in paragraphs 25 through 62, Defendants Kaplan, SOS, SOSI, and Manna Int'l, in connection with the purchase and sale of securities, by the use of the means and instrumentalities of interstate commerce and by the use of the mails, directly and indirectly: (a) used and employed devices, schemes and artifices to defraud; and (b) engaged in acts, practices and courses of business which operated or would have operated as a fraud and deceit upon purchasers and prospective purchasers of securities.

67. As described in more detail in paragraphs 45 through 62 above, Defendants acted with *scienter* in that they knowingly or recklessly engaged in the fraudulent scheme identified

above.

68. By reason of the foregoing, Defendants Kaplan, SOS, SOSI, and Manna Int'l violated Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5(a) and (c) thereunder [17 C.F.R. 240.10b-5(a) and (c)].

## COUNT II
### Violations of Section 10(b) of the Exchange Act, and Exchange Act Rule 10b-5(b)
### (Against Kaplan and SOSI)

69. Paragraphs 1 through 64 are realleged and incorporated by reference.

70. As more fully described in paragraphs 25 through 62, Defendants Kaplan and SOSI, in connection with the purchase and sale of securities, by the use of the means and instrumentalities of interstate commerce and by the use of the mails, directly and indirectly made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

71. As described in more detail in paragraphs 45 through 62 above, Defendants Kaplan and SOSI acted with *scienter* in that they knowingly or recklessly made the material misrepresentations and omissions.

72. By reason of the foregoing, Defendants Kaplan and SOSI violated Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5(b) thereunder [17 C.F.R. 240.10b-5(b)].

## COUNT III
### Violations of Sections 17(a)(1) and (3) of the Securities Act
### (Against Kaplan, SOS, SOSI, and Manna Int'l)

73. Paragraphs 1 through 64 are realleged and incorporated by reference as though fully set forth herein.

74. By engaging in the conduct described in paragraphs 25 through 62 above, Defendants Kaplan, SOS, SOSI, and Manna Int'l, in the offer and sale of securities, by the use of the means and instruments of interstate commerce, directly or indirectly, have (a) employed devices, schemes and artifices to defraud; and (b) engaged in transactions, practices, or courses of business that operated or would operate as a fraud or deceit upon the purchasers of such securities.

75. Defendants Kaplan, SOS, SOSI, and Manna Int'l intentionally, recklessly,

1  negligently engaged in the devices, schemes, artifices, transactions, acts, practices and courses of
2  business described above.

3      76.     By reason of the foregoing, Defendants Kaplan, SOS, SOSI, and Manna Int'l
4  violated Section 17(a)(1) and (3) of the Securities Act [15 U.S.C. § 77q(a)(1) and (3)].

### COUNT IV
### Violations of Section 17(a)(2) of the Securities Act
### (Against Kaplan and SOSI)

7      77.     Paragraphs 1 through 64 are realleged and incorporated by reference as though fully
8  set forth herein.

9      78.     By engaging in the conduct described in paragraphs 25 through 62 above,
10 Defendants Kaplan and SOSI, in the offer and sale of securities, by the use of the means and
11 instruments of transportation or communication in interstate commerce or by use of the mails,
12 directly or indirectly, have obtained money or property by means of untrue statements of material
13 fact or by omitting to state material facts necessary in order to make the statements made, in light of
14 the circumstances under which they were made, not misleading.

15      79.     Defendants Kaplan and SOSI made the untrue statements and omissions of material
16 fact.

17      80.     By reason of the foregoing, Defendants Kaplan and SOSI have violated Section
18 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

### COUNT V
### Violations of Section 15(a)(1) of the Exchange Act
### (Against Kaplan)

21      81.     Paragraphs 1 through 64 are realleged and incorporated by reference as if set forth
22 fully herein.

23      82.     By engaging in the conduct described in paragraphs 25 through 62 above, Defendant
24 Kaplan was in the business of effecting transactions in securities for the accounts of others.

25      83.     Defendant Kaplan made use of the mails and the means and instrumentalities of
26 interstate commerce to effect transactions in and to induce or attempt to induce the purchase of
27 securities.

28      84.     By engaging in the conduct described in paragraphs 25 through 62 above, Defendant

1  Kaplan acted as a broker but was not registered with the Commission as a broker.

2      85.    By reason of the foregoing, Defendant Kaplan violated Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

**COUNT VI**
**Control Person Liability Under Section 20 of the Exchange Act**
**(Against Kaplan)**

86.    Paragraphs 1 through 64 are realleged and incorporated by reference as if set forth fully herein.

87.    Defendants SOS, SOSI, and Manna Int'l violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] as described in paragraphs 65 through 72 above (Counts I and II), which are realleged and incorporated by reference as if set forth fully herein.

88.    Defendant Kaplan controlled the day-to-day affairs of SOS, SOSI, and Manna Int'l and possessed, directly or indirectly, the power to direct or cause the direction of the management and policies of SOS, SOSI, and Manna Int'l. Defendant Kaplan was involved in the formulation and execution of the fraudulent acts, misrepresentations, and omissions by Defendant SOS, SOSI, and Manna Int'l described in paragraphs 25 through 62 above.

89.    Defendant Kaplan directly or indirectly controlled SOS, SOSI, and Manna Int'l within the meaning of Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)].

90.    Defendant Kaplan is liable as a control person for violations of SOS, SOSI, and Manna Int'l of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

91.    By reason of the foregoing, Defendant Kaplan is liable jointly and severally with and to the same extent as SOS, SOSI, and Manna Int'l pursuant to Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)].

**COUNT VII**
**Equitable Disgorgement**
**(Against Relief Defendants)**

92.    Paragraphs 1 through 64 are re-alleged and incorporated herein by reference.

93.    Relief Defendants Lisa Kaplan, WWF, and Manna obtained money, property, and

assets as a result of the violations of the securities laws by Defendants Kaplan, SOS, SOSI, and Manna Int'l to which Lisa Kaplan, WWF, and Manna has no legitimate claim.

94. Relief Defendants Lisa Kaplan, WWF, and Manna should be required to disgorge all ill-gotten gains which inured to its benefit under the equitable doctrines of disgorgement, unjust enrichment and constructive trust.

## **RELIEF REQUESTED**

**WHEREFORE,** the Commission respectfully requests that this Court:

### I.

Issue findings of fact and conclusions of law that Defendants committed the violations charged and alleged herein.

### II.

Enter an Order of Permanent Injunction restraining and enjoining Defendants Kaplan, SOS, SOSI, and Manna Int'l, their officers, agents, servants, employees, attorneys and those persons in active concert or participation with defendants who receive actual notice of the Order, by personal service or otherwise, and each of them from, directly or indirectly, engaging in the transactions, acts, practices or courses of business described above, or in conduct of similar purport and object, in violation of Section 17(a) of the Securities Act [15 U.S.C. §§ 77q(a)], and Section 10(b) of the Exchange Act [15 U.S.C. § 78j] and Rule 10b-5 [17 CFR § 240.10b-5] thereunder.

### III.

Issue an Order requiring Defendants Kaplan, SOS, SOSI, and Manna Int'l and the Relief Defendants L. Kaplan, WWF, and Manna to disgorge the ill-gotten gains received as a result of the violations alleged in this Complaint, including prejudgment interest.

### IV.

With regard to the Defendants' violative acts, practices and courses of business set forth herein, issue an Order imposing upon defendants appropriate civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

V.

Retain jurisdiction of this action in accordance with the principals of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

VI.

Grant such other relief as this Court deems appropriate.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Commission hereby requests a trial by jury.

Dated: May 19, 2016

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION

*/s/ Alyssa A. Qualls*
Alyssa A. Qualls (QuallsA@sec.gov)
Amy S. Cotter (CotterA@sec.gov)
Raven A. Winters (WintersR@sec.gov)

SECURITIES AND EXCHANGE COMMISSION
175 West Jackson Blvd., Suite 900
Chicago, IL  60604
(312) 353-7390
(312) 353-7398 (fax)

*Attorneys for Plaintiff*

15

**PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action. My business address is:

U.S. SECURITIES AND EXCHANGE COMMISSION,
175 West Jackson Blvd., Suite 900, Chicago, Illinois 60604
Telephone: (312) 353-7390; Facsimile: (312) 353-7398

On May 19, 2016, I caused to be served the document entitled **COMPLAINT** on all the parties to this action addressed as stated on the attached service list:

☐ **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service. Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐ **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐ **HAND DELIVERY:** I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐ **UNITED PARCEL SERVICE:** By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☐ **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒ **E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX:** By transmitting the document by facsimile transmission. The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date: May 19, 2016         /s/ Alyssa A. Qualls
                           Alyssa A. Qualls